16-2182 is Brian Himber. If not the lawyers who are going to argue, please approach. Tell us who you are and who you represent. My name is Allison Shaw with the Office of the State Appellate Defender, and I represent Brian Himber. Okay, and you're going to work on your volume for us today, okay? That doesn't really project that much, and I have some hearing issues, so you're going to help me out. And who's going to argue for the state? My name is Aileen Diaz, and I will be arguing issues 1, 2, and 4 for the state. Okay. Good morning. Janet Mahoney on behalf of the people, and I'll be arguing issues 3, the volunteering intoxication. I recognize you. Good to see you. Okay, the usual time supply, 15 minutes per side. We don't have another case afterwards, and if we, you know, hit you with too many questions or take up some of your time, we probably aren't going to harass you all that much. You'll note that Judge Smith is not here. There are some significant circumstances that prevent him from being here today. He's fully up to speed on the case, and we'll listen to the arguments and participate fully in the ultimate decision that gets issued, okay? All right. May it please the Court, today I'd like to discuss issue 1, the lesser included jury instruction, and issue 3, his inability to present a complete defense. I'm also happy to answer any questions on the other issues as well. At Brian Himber's trial, there was some evidence by way of Scott Carmignani's testimony as well as Himber's own testimony to support an instruction on the lesser included offense of involuntary manslaughter. Scott Carmignani testified that Himber was shooting to scare, while Himber himself testified that he loved Tracy Mays and was looking forward to building a life with her. Well, when Scott testified, he assumed that he was trying to scare, right? Was that the operative word here? Yes, that was his testimony. And that's exactly why this instruction needs to be put in front of the jury, because the jury had the role to determine what weight to give to Scott Carmignani's testimony and how to utilize that testimony and what conclusions the jury could draw from it, not the Court. But you also had the evidence from two of the witnesses in the House who said that he walked past them saying that he was going to go kill her. And that's correct. That doesn't sound like, you know, trying to scare somebody. That is correct, that there was testimony on both sides of this, which is why it was the province of the jury as the trier of fact to determine what weight to give to this testimony and to determine whether Himber was guilty of first-degree murder or the lesser-included offense of involuntary manslaughter. And what the trial court did when it refused to allow the instruction on the lesser-included offense is it took that decision-making away from the jury and instead substituted its own credibility determination, its own weighing of the evidence, when it is clear that it is the province of the jury to determine this. But the evidence that you're talking about was clearly based on an assumption. I mean, he's got a friend who's saying, oh, I'm assuming he's just shooting over her head. Regardless of what it was, the point is, is that it was some evidence. And McDonald makes clear that it's not whether there needs to be definitive evidence or evidence that the jury certainly would have found guilty of the lesser-included evidence or even it doesn't even need to be credible evidence. All that is required is some evidence to support the instruction on the lesser-included offense so that the jury is then able to make that determination for themselves. Is it trained state trooper? Yes. Passed all of his gun tests, shooting tests? Yes. Yes. If you were trying to shoot over her head, he would have been able to do that? Presumably. Or the thing is, the thing is is he's trained to shoot at a mass, not to scare people. Right. And I think that that's part of also what goes into why this was left, you know, this was a consideration for the jury, is that these shots were also, you know, towards the upper left part. He could also have been shooting above her and missed that. He said that he was trained to shoot directly at people, not to shoot to scare them. That was his testimony. Scott's testimony was, I don't really know what he was doing. I assumed he was trying to scare her. The other witnesses said he testified that he said, I'll kill her. How is that competent evidence that he wasn't intending to kill her, but merely to scare her? But that's exactly the issue, right, is that the evidence doesn't need to be credible. The evidence doesn't need to be perfect. All that is needed is that there needs to be some evidence to support the instruction. What the issue here is not what needs. An assumption is not evidence. You know the old expression. If you assume something, you make an A.S.S. out of you and me, right? Correct. But this is what we are, the danger that we are getting into, which is the danger that happened at the trial court as well, is that we are putting our own conclusions and our own judgment calls on the testimony. No. This was something that was left for the jury. He put this entire argument on appeal with a conclusion, with an assumption, with something that has no basis in fact, is in fact contradicted by the autopsy photographs that he wasn't shooting above the head. But that's the weighing of the evidence, Your Honor. No. His testimony was strictly and categorically an assumption. An assumption is not competent evidence that should get an instruction on this type of, for this type of murder charge. The important thing is that when this instruction is offered, when counsel asks for this instruction, what needs to happen is that the court can't engage in this credibility determination, can't do that. And if you look at the court's words here, that's what the court was doing. The court committed error here because it used its own words saying in weighing the evidence. It took Scott Carbignani's testimony and it weighed it against the other evidence. The court may have done that, but what was being weighed was an assumption versus the physical evidence at the scene. It was his observation of what he saw. He said he assumed that that's what he was doing. That you can't get any straighter than that. That's still evidence, though. It's incompetent evidence. But that's what McDonald's makes clear, that you don't need credible evidence. You don't need perfect evidence. You need evidence. But an assumption is not evidence. I mean, it was testimony, but it wasn't evidence. His testimony, which the jury could have used to support this. In fact, the jury made clear in its note that it was sent out that it was looking for a third option, that it was looking for something to better understand the differences between the degrees of first-degree murder, the degree of first-degree murder, to look for an option between a conviction on first-degree murder or an outright acquittal. This indicates that they saw something in the case. The jury saw some evidence to support this. It wasn't also just Scott Carbignani's testimony. Himber himself testified that he loved her, that he wanted to build a life with her. There is evidence here to – there is evidence that meets the very, very low standard of some or very slight evidence to support giving this instruction. And what these courts – what these cases make clear is that when there is a question like this, when the court has to weigh this evidence against the other things, the deference should be given to giving the instruction to the jury because it is the jury that is the trier of fact, not the court. It is the jury that needed to weigh this. The evidence that the jury heard in this case was that this man was drunk, he was mad at her getting a text message from somebody else that he thought she was involved with, and he walked through the house or around the party and said he was going to go kill that bitch. That was the testimony. That's the evidence. Now, what you want to bring up with Scott is an assumption. Even though it came out in testimony, it doesn't mean that it's competent evidence. It's the opposite. It's guess, speculation, and conjecture. But you can also look to his actions. Scott was the person who looked at his face, who testified to how he, what Mr. Himber was doing, and even after the shooting, he so firmly believed that Himber was shooting to scare and not actually shooting to kill her that he did not, that he thought that he had shot into the door and then did not even go to her to render aid. He did not even think that that was a possibility in his mind. So he was a bad shot. He aimed and was a bad shot and hit her and killed her and was a bad shot when he tried to kill himself and didn't succeed. And you try to tell us in briefs here, this is a quote, that that was the ultimate statement of remorse? That's in my excessive sentence argument, yes. Good luck with that one. Maybe you'd like to move on. Key to Brian Himber's defense was the issue of his credibility. As Himber's testimony explained, why he was not shooting to kill because he loved Tracy Mays. Himber testified that he could not recall the shooting itself, a fact that he could not recall because the event was never actually encoded in his memory. The state's own actions highlight the significance of this testimony as they capitalized on his exclusion both in closing and in their brief on appeal. The exclusion of this testimony denied Himber the ability to present a complete defense, particularly where his testimony was critical to explain that he was not shooting to kill but was only shooting to scare. Voluntary intoxication is not a defense? I am not arguing that. And I do not argue that in my brief. And I agree that voluntary intoxication is not a defense. The issue here is his credibility. This evidence was not necessary, was not, the argument here is not a question of presenting voluntary intoxication as a defense. Jurors are instructed in every case that their verdicts are not to be based on guess, speculation, and conjecture. Okay? And that's all you have here with Scott's testimony. The defendant himself, you know, because he blacked out, he didn't offer anything as to what he was doing. And all you have here from Scott is guess, speculation, and conjecture. Thoroughly incompetent. I think it's a difficult argument for you to make that the judge did something wrong by not giving that instruction. Yes, I'm sorry. I had moved on to issue three, and I apologize because I did not make that clear. But, yes, my position on the lesser included instruction is that given the state of the law, given that courts have made clear that it is the province of the jury to weigh the evidence, to determine what weight to give that evidence, and to analyze the credibility of the witnesses, the trial court usurped the role of the jury when it took that question out of the jury's hands and instead substituted its own credibility, determination, and its own weighing of the evidence, which its own words make clear. And now moving on to issue three. As I said, this is an issue of credibility, not an issue of voluntary intoxication. The issue of the question of blackout and his lack of memory spoke to his credibility. He testified that he loved her. He testified that he wanted to build a life with Tracy Mays. And when he had the opportunity to explain the shooting itself, he testified that he could not recall. This hole, this blank in his testimony was clearly something the state found to be a significant problem that made him look like an incredible witness. So in order to bolster his credibility, defense counsel attempted to introduce the scientific testimony of Dr. Roan, who could give an explanation for his lack of memory on this point, which would make him more credible in the eyes of the jury and not, as the state turns it, look at his incredible selective memory. So the inability to present this deprived him of his ability to present a testimony. If there are no further questions, I would like to reserve the remainder of my time for rebuttal. Okay. Good morning. Again, Janet Mahoney on behalf of the people. Defendant today claims that he only wanted to introduce the expert testimony about his intoxication to address his inability to remember. However, that's not what they were doing at trial. Counsel specifically stated at trial that he wanted to introduce evidence of intoxication to undermine his ability to form the intent to kill. And that's the ruling that this court should be reviewing here today, not the recharacterization of that theory here on appeal. The law is clear. Voluntary intoxication is not a defense. You have before you in the briefs the statutes in Illinois. And you can see that in Illinois they explicitly excluded a defendant's ability to use his intoxication to negate his mental state. What counsel is trying to do here below and in many other cases here in Illinois, is to use an expert testimony under the guise of the state didn't prove me guilty beyond a reasonable doubt. Here specifically we're dealing with an expert that the court properly excluded. And that ruling should be upheld. The elephant in the room in this case is the People v. Lebon case. And in that case, another division of the appellate court implicitly read back into the law a defendant's ability to inject his intoxication to negate his mental state. This court should address that case head on to avoid the problem that we're dealing with here today. Any attempt to use his intoxication to negate the evidence that he acted intentionally is nothing but a diminished capacity defense. An Illinois diminished capacity is not a defense that's recognized. Any suggestion that we're here using his inability to remember against him came from the fact that the court gave great liberties to defense counsel with the defendant's testimony. And it allowed him to inject quite a bit of testimony about his intoxication into the trial, even though the court had excluded the expert and should have consistently kept out that testimony in this case where it was only being used to undermine the state's ability to prove defendant's intent to kill. And in that respect, the state was responding to the defendant's theory that he somehow was not guilty because he could not remember the shooting and that he was just the loving boyfriend. So he was drinking. Then he got sick. Then he decided to go drink again. He didn't decide to go home. He didn't decide to stop drinking. He didn't decide to have something to eat to try and settle his stomach down. He started drinking again. Then he got sick again. Then he started drinking again. So the choices that he was making that night were voluntary choices. Correct. I mean, he had points of time where he could have said, I've had enough of this. But he didn't do that. Correct. So at the trial, he was trying to use that intoxication as a reason, as an excuse. But I see it as like three separate times, two separate times when he could have said, you know, I'm done with this. Correct. So it's exactly why the law changed in Illinois. And that is because these are voluntary acts. You voluntarily drink yourself to this point, even if you did it in one sitting, not in three separate ones like you've described. And that is why the legislature has specifically taken that out of the statute. And all they are doing is requesting this court to implicitly read it back in. The trial court rejected the expert testimony, followed the law. However, as I stated, the defendant took the stand and was given great liberties with that evidence. But make no mistake about it. The ruling on the expert was proper. The evidence of intoxication is not admitted, should not be admitted to undermine the defendant's ability to form a mental state. This court should address the Slabon case head on so that that is not something that people are relying on in the future. Slabon was a case where the state prevailed, and there was no opportunity for the state to challenge that ruling in that case. The Illinois legislature took away a defendant's ability to use his intoxication to undermine his ability to form a mental state. That's what the defendant was trying to do here at trial. That's the evidence that the court kept out. Any claim here today that it was only to show that he had an inability to remember is not the claim that was below and, quite honestly, isn't a defense anyway. An inability to remember is not the same as an inability to perform an act. Correct. Correct. So it wasn't even a defense to begin with. It would be irrelevant testimony, the I can't remember. There are witnesses that said he did the shooting. Correct. There's no doubt about that. Witnesses who said that I'm going to kill her. Witnesses who, and the physical evidence in this case where he shot into her body's center mass three times. Unless there are any further questions, my co-counsel will address the instruction issue. Good morning again, Your Honors. Aileen Diaz on behalf of the people. I would like to start by addressing defendant's argument that the trial court should have given jury a lesser included instruction of involuntary manslaughter. As we all know, in order for the trial court to have done that, there would have needed to be some evidence presented at trial that defendant acted recklessly. And as it was alluded to before during opposing counsel's argument, there was none. Defendant's reliance on Scott Carmiani's testimony to support his argument that that was some competent evidence, as Justice Lavin put it, is just unpersuasive. Scott's entire testimony, well, first of all, if we start with what Scott said, he said defendant approached him from behind. He said that all he was focused on was defendant's face and defendant's shoulder. Scott did not even know that defendant possessed a gun until after the third shot was fired. There's no way that he could have observed what defendant was actually doing or where defendant was shooting. He said he thought defendant shot to scare Tracy Mays. He assumed that that's what defendant did. But of course that's what he assumed. That's his friend. They're at his child's party. This entire thing was based on conjecture. It is not competent evidence. And when the trial court said it was weighing the evidence, it was reviewing the evidence. Weighing was inartfully used given the case law that we have. But the trial court needs to review all of the evidence in order to determine whether there is some competent evidence that would warrant giving a lesser included instruction. And here not only do we not have any evidence, as the court said, there was not even slight evidence to support giving such an instruction. What we have here is overwhelming evidence of defendant's intent to kill Tracy. We have witnesses who testified that defendant was angry shortly before he killed Tracy. We have two individuals who said that they heard defendant say he was going to kill that bitch right before he killed Tracy. We have Scott who heard defendant say I am done with this right before he killed Tracy. And more importantly, we have the physical evidence that shows that defendant shot in a downward trajectory. Those bullets were recovered. At least two of them were recovered from center mass where defendant as a trained marksman intended to put them. This was intentional, it was deliberate, and it was definitely not reckless. And I don't know how it can be said that the trial court abused its discretion in not giving a lesser included instruction of involuntary manslaughter. If Your Honors have no questions about that, I would like to move on to the autopsy photos. Okay. Defendant argues that the State gratuitously introduced irrelevant and grisly photographs into evidence. Defendant is wrong. By saying that the photographs were irrelevant because the only issue at trial was defendant's mental state, defendant is putting a very narrow spin on it. In order to examine defendant's mental state, the State was entitled to put on competent evidence. And that included the autopsy photographs to illustrate to the jury, to help the jury understand the forensic pathologist's testimony and to illustrate to the jury the trajectory of the bullets. So to the extent that defendant's entire theory at trial was that he recklessly shot to scare Tracy, the State was entitled to present to the jury these photographs that showed where the bullet entry wounds were and to help illustrate the pathologist's testimony that the bullets were recovered from a lower point than where they entered. Were the photographs – so as to that point, they were not gratuitously entered. They were very much relevant. Were they prejudicial? Of course, all evidence tends to be prejudicial. Were they overly prejudicial? They were not. They were not grisly. They were neat. The incisions that were shown were clean. And these were very clinical photographs that the State was allowed to use to present its evidence and to present its theory of the case. If there are no questions about that. As far as the sentence, we would rest on our brief for that, Your Honors. There is nothing that the trial court did not consider that defendant is asking this court to consider today. The trial court considered everything and was actually very lenient in perceiving defendant's suicide attempt as an act of remorse. So where defendant got five years below the minimum, we would ask you to affirm both the sentence and the judgment below. If there are no questions, thank you for your time. Thank you. Just a couple of ‑‑ sorry, I just have a couple brief comments. First of all, with regards to issue three, I want to make clear that both at trial and on appeal, that the issue of the expert testimony on alcohol-induced blackouts was argued at trial and was included in the motion for new trial as well, specifically with regards to the fact that this went to his inability to form the memory and the blackout itself as a question of his credibility, not as a part of a voluntary intoxication offense. That was also argued below. However, because that is not a defense in Illinois on appeal, I am only pursuing the issue with regards to that blackouts, that his blackout was a real, that there was a real scientific explanation for why he could not recall the shooting and why he testified. I'm just curious why it makes a difference whether he recalled it or not when there are witnesses that say the evidence shows that he shot her, the evidence shot her at center mass, witnesses said he was going to kill her. He's a state trooper that's trained to shoot. So the fact that he can't remember it, well, I mean, there are lots of things that people can't remember, but they still did it. You're not denying that he did it. You're just denying that he, you're just trying to tell us that he can't remember it. So somehow that makes it okay. No, no. I'm sorry. That's not what I'm arguing. I'm not arguing that the fact that he didn't remember makes it okay. What I'm, what the argument is is that it spoke to his credibility. And that's, and the state, to answer the first part of your question, the state made it an issue when in closing they used his inability to remember to directly attack his credibility, to directly say, look, he's not credible. You can't believe him because he's conveniently choosing to forget the shooting. And that's why this was a necessary part of his defense. And the inability to present that deprived him of his ability to present a complete defense because it spoke to his credibility, which the state then made an issue of. The state knew that this evidence was inadmissible, was withheld from the jury, and then capitalized on it in their closing arguments, specifically using this to argue against Himber's credibility. Moving back to the first issue, just very briefly, I want to point out that as pointed out, the question here is that there needed to be some evidence that Ryan Himber acted recklessly. And I just want to make clear the difference between knowledge and recklessness. Recklessness is a conscious disregard of a substantial and unjustifiable risk. Here there was some evidence that Himber made a conscious disregard of a substantial and unjustifiable risk when he fired the gun in the direction of Tracy Mays. The difference between first-degree murder and involuntary manslaughter is that... That action was preceded by him telling people, I'm going to kill that bitch. Before he did it, he said he was going to do it. And again, that is evidence that the jury had to weigh. It was within the province of the jury to weigh those statements, to weigh Scott's testimony, to weigh everything that was presented and make their own determinations of what it was. And I think what we need to remember here is that we can't get away from the fact that it is improper for the trial court to take that away from the jury. And the trial court's own words show that, one, it recognized that Scott Carmignani's testimony supported this. It said, the court said, if you take Scott's testimony on its own, maybe. That right there shows that there is some evidence to support the finding of recklessness on the part of the jury. But the trial court instead said, no, I'm going to weigh that against the other evidence. And that right there is the error. That right there is why courts have made clear, very recently made clear, that it doesn't have to be credible evidence. It doesn't have to be significant evidence. You don't need to prove that a jury will definitively have found an individual guilty of the lesser included offense. All that needs to be shown is that there is some very slight evidence. And I think what's important here is that the jury's note shows that they were considering this. They were thinking about it and did not have the information that defense counsel wanted to put in front of them. Finally, another point that was made was this question of trajectory. First of all, I think it's important to note that the medical examiner specifically testified that she could not assign any specific trajectory. So there's nothing that can be read from any alleged angle of the bullets going in. Second of all, and going along with that, is that because of, you know, the reason that you can't, that the medical examiner, the reason that that's difficult is because if Tracy was in a slumped position, which is what Scott testified, that she was slumped over sitting down looking at her phone, that the bullets went and ended up in a lower position doesn't actually show the angle that the gun was fired from. It just shows, basically, without getting into the weeds of all of this, the important thing is that the medical examiner could not assign a trajectory. Without that, there's no inference to be drawn from where the bullets were found in the body. There is testimony that he was standing. Yes, in front of her. There is testimony that she was sitting on the front stairs. Yes. So if he were shooting over his head, why weren't there bullets in the door, bullets in the windows? Because the question here is it doesn't matter. He could have fired the gun in any direction to meet that recklessness standard. He could have been pointing it at her, intending to miss, and making a conscious disregard of the substantial and unjustifiable risk that death would result, that he could cause death or great bodily injury to her. So simply because the bullets were not found in the door, found in the window, doesn't mean that he was making a conscious disregard of this risk. But again, this was a question for the jury to determine, the jury to say where were the bullets found, what was the testimony, how did all of this come together, and for the jury to make that determination because it is the jury that's the trier of fact, not the court. Finally, with regards to issue two, the question of the autopsy photos, the main argument there is that the photos were cumulative and unnecessary, specifically where the medical examiner gave very specific detailed testimony about the location of each of the shots. And showing, while it may seem, while for professionals who work in the criminal justice system, might be used to seeing a lifeless body on a slab, that is not something that a lay person would view, would necessarily view, with having a cold clinical thoughts running through their head. Someone who has never seen a dead body perhaps could easily have a very strong visceral reaction to seeing a dead body with holes in it. And because of that, they were overly prejudicial, they were unnecessary, given the medical examiner's testimony, and therefore it was error for them to be shown to the jury in the repetitive and excessive manner that they were. If there are no further questions, I ask to submit this case for decision. Thank you. Thanks for the great briefs and arguments. You just used the word visceral. There's a lot of visceral things in this very, very disturbing case. And as usual, we appreciate the passion and commitment on both sides in all of these cases, particularly in the more difficult ones. We're adjourned, and we will get an opinion out to you directly.